**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARYL A. BELL, SR.,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:04-0927** |
| **V.** | : | **(NEALON, D.J)** |
| | | **(MANNION, M.J.)** |
| **PENNSYLVANIA BOARD OF PROBATION AND PAROLE,** | : | |
| | : | |
| **Respondent** | : | |
| | : | |

## REPORT AND RECOMMENDATION

The petitioner, an inmate incarcerated at the Pennsylvania State Correctional Institution at Dallas ("SCI-Dallas"), Dallas, Pennsylvania, filed this *pro se* petition for a writ of habeas corpus on April 28, 2004, pursuant to 28 U.S.C. § 2254. (Doc. No. 1). The petitioner alleged that the Pennsylvania Board of Probation and Parole ("Parole Board") changed its policies and procedures in 1996, and subsequently in 2000, in such a way as to apply unconstitutionally stringent standards for granting parole.  He claimed, *inter alia*, that these changes violate the *ex post facto* clause of the United States Constitution.

A show cause order was issued on April 28, 2004. (Doc. No  4).  After being granted an extension of time in which to do so, the respondents filed a

response, with supporting documentation, on June 16, 2004. (Doc. No. 10).

The petitioner filed a reply to the response on June 24, 2004. (Doc. No. 11).

After considering the pleadings, and construing them liberally in favor of the *pro se* petitioner, the undersigned concluded that the petitioner was attempting to state a Fifth Amendment claim in addition to his *ex post facto* claim. Relying upon <u>Defoy v. McCullough</u>, 393 F.3d 439 (3d Cir. 2005), it was noted that if denial of parole was based on a prisoner's refusal to admit guilt of sex offenses, as required for admission into the sex offender treatment program, this might implicate the Fifth Amendment right against self-incrimination.  The respondents were ordered to file a supplemental response to address the possible Fifth Amendment challenge.  The respondents filed a supplemental response on May 2, 2005 (Doc. No. 20), and the petitioner filed a reply to the supplemental response on May 12, 2005. (Doc. No. 21)

## I.   **BACKGROUND**

The petitioner ("Bell") was convicted in Philadelphia County of statutory rape of his step child, on August 7, 1990.  On the same date, offenses of indecent exposure and indecent assault were both nolle prossed.  He was sentenced on May 30, 1993, to an eight (8) to twenty (20) year term of incarceration.   The minimum release date was May 30, 2001, and the

2

maximum release date is May 30, 2013. (Doc. No. 10, Attachments, unpaginated).  The petitioner had previously been convicted of first degree murder and was serving a life sentence which was later commuted to a minimum term of 16 years before he was paroled in 1978. In his reply to the respondents' supplemental response the petitioner states that he filed a post-conviction petition claiming prosecutorial misconduct and ineffective assistance of trial counsel.  As to the disposition of the post-trial petition, Bell states "the petition was ruled untimely because the State Trooper's Investigative Report of this rape conviction was filed past the 60 days the law allow[s]."  Bell also states, "[a]t the present time, Bell filed a timely challenge to his sentence, which is now awaiting decision in the Pennsylvania Supreme Court (No. 198 MAP 2002)." (Doc. No. 21, p. 6). The petitioner has provided no further information concerning this appeal.

The petitioner received his first parole hearing in April 2001, at which time parole was denied.  The petitioner indicates that he has been reviewed for parole on a number of occasions since that time.  Neither the petitioner nor the respondents have provided the court with information as to why the petitioner was denied parole on the previous occasions. However, the only challenge raised in this habeas corpus petition, relates to the parole denial of April 12, 2004. (Doc. No. 1, pp. 1-2).

The petitioner claims that the Department of Corrections ("DOC") has a policy whereby parole is routinely denied to inmates who refuse to participate in a sex offender prescriptive program. This program has as a required prerequisite that the inmate admit guilt for his sexual offense. He claims that this policy violates his constitutional rights. Specifically, he believes that the policy violates his Fifth Amendment right against self-incrimination. The petitioner also appears to be asserting a retaliation claim. He believes that he is routinely being denied recommendation for parole by corrections staff because he steadfastly refuses to admit guilt for the rape he has been convicted of.

The petitioner also asserts, citing Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir.), *cert. denied sub. nom.* Gillis v. Hollawell, 540 U.S. 875, 124 S. Ct. 229 (2003), that the Parole Board's application of the 1996 amendments to parole laws, as well as new parole policies regarding sexual offenders instituted in 2000, codified at 42 Pa. C.S. § 9718.1, have mandated, in his case, an increase in his punishment which violates the *ex post facto* clause. The petitioner maintains that he has completed all of the prescriptive sex offender programs which are available to him as a "denier," that is, an inmate who refuses to admit that he committed the crime for which he has been convicted. The petitioner complains:

4

...Prior to completing his minimum sentence, Petitioner successfully completed his "prescriptive" program ["denier" sex offender therapy] rather than "admitter" therapy; that is, Petitioner was accepted into a therapy group for offenders who refuse to admit guilt, offered by the Department of Corrections (DOC). Upon completing the program, the DOC awarded the Petitioner a Certificate of Completion with the following notation: **"NO FURTHER TREATMENT. Discharged Having Reached Maximum Therapeutic Benefit**." Dated **"9-7-99"**...

On March 30, 2004, Petitioner was again interviewed by Board members...and on **"April 12, 2004**", the Board ordered Petitioner to serve yet another two (2) years, citing the safety of the Commonwealth and Petitioner's refusal to admit guilt, and failure to complete a newly created sex offenders' group. However, what is not said [in the Notice of Board Decision dated April 12, 2004] is that the Department of Corrections refuses admittance to the sex offenders group, to all who will not admit guilt, and punish[es] them by refusing parole for not completing the program...

(Doc. No. 1, pp. 3, 4)(emphasis in original).

In the original response to the petition the respondents argued that the petition should be dismissed because the petitioner did not exhaust state court remedies.  In the alternative, the respondents argued that the petition should be denied because no violation of the *ex post facto* clause occurred. Specifically, the respondents maintained that no violation of the *ex post facto* clause occurred because: (1) no action on the part of the Parole Board has increased Bell's punishment, either actually or potentially; (2) Bell's participation in the prescribed sex offender program was only one of several

factors considered by the Board, and participation in the program was rationally related to legitimate penological objectives, and (3) the Board acted entirely within its discretion in denying the petitioner parole.

In the supplemental response the respondents further assert that the petitioner did not exhaust state court remedies regarding the Fifth Amendment claim, and that even if he had, the prescriptive program in question is voluntary and does not implicate the Fifth Amendment right against self-incrimination.

## II.   DISCUSSION

### A.   The Fifth Amendment Claim

The petitioner claims that the Department of Corrections policy of excluding "deniers" from sex offender treatment programs violates his Fifth Amendment right against self-incrimination.  He argues that to force him to admit to guilt for the underlying rape conviction would open him to a charge of perjury.  It is apparent that the petitioner believes that he has discovered "new evidence" in the form of an investigative report, and that he is hopeful of obtaining a new trial. *See* Doc. No. 11, p. 8, "New Matter."  The petitioner therefore does not intend to admit guilt for the rape because he believes that to do so would have potential negative impact on his new trial.  The petitioner

states in his reply to the supplemental response:

> ...Amendments to Pennsylvania's Parole Act, made after Bell's conviction, have been and continue to be applied to his parole applications in violation of the Ex Post Facto Clause, and the 5th Amendment of the United States Constitution. Retaliating against an inmate who refuse[s] to commit perjury, in light of newly discovered evidence of his innocence, is a manifest injustice...
>
> ...[T]he Pennsylvania Board of Probation and Parole...never addressed the issue that is at the heart of this case, namely;
> 1). Using Bell's refusal to commit perjury as a mandatory condition of parole, in violation of his 5th Amendment protection; 2). conceding to the retroactive application of Pa. Statute 42 Pa.C.S. § 9718.1, December 2000, which gives rise to both the ex post facto clause and the 5th Amendment violation, and finally, 3). under 42 Pa.C.S. § 9718.1, as applied retroactively to Bell, he is not <u>eligible</u> for parole as long as he refuse[s] to commit [perjury]. As further punishment for the refusal, the Department of Corrections' policy is to withhold recommendations for parole to Bell...
>
> ...Bell has completed all programs available to him prior to the enactment of 42 Pa.C.S. § 9718.1, and was awarded certificates of completion by the Department of Corrections' non-admitters classes...The Board's own statements prove Bell's case, namely:
>
>> "It is the Board's position that the acceptance of responsibility for one's crime(s) is the beginning of rehabilitation, and the Board does not parole prisoners who refuse to even begin to be rehabilitated."

(Doc. No. 21, citing Respondents Supplemental Response at p. 3.).

The respondents assert first that the petitioner has not exhausted state remedies on the Fifth Amendment claim. The petitioner brought this habeas

corpus petition pursuant to 28 U.S.C. § 2254.  A state inmate must exhaust all available state remedies prior to filing a petition for writ of habeas corpus in federal court. Barnhart v. Kyler, 318 F. Supp.2d 250 (M.D.Pa. 2004)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); 28 U.S.C. § 2254(b)and(c).  When an inmate completes one full round of the state's standard review process, the claim is considered exhausted, even if alternative channels of review exist.  O'Sullivan, 526 U.S. at 844-45). Exhaustion does not require that the claim actually be adjudicated by the state's highest court; it mandates only that the claim be presented. Barnhart, 318 F.Supp.2d at 256 (citing Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984).  The claim, however, must be "fairly presented" to the state courts, which means that "both the legal theory and the facts underpinning the federal claim must have been presented to the state courts...and the same method of legal analysis must be available to the state courts as will be employed in the federal court." Blasi v. Attorney General of the Commonwealth of Pennsylvania, 30 F.Supp.2d 481, 486 (M.D. Pa. 1998).

The Third Circuit Court of Appeals has held that exhaustion is not a jurisdictional requirement, but a matter of comity.  See Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994).  The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role

of state courts in protecting federally secured rights. <u>Caswell v. Ryan</u>, 953 F.2d 853, 856 (3d Cir. 1992). Pennsylvania inmates may challenge a denial of parole through a mandamus petition filed in the original jurisdiction of the Pennsylvania Commonwealth Court. <u>Coady v. Vaughn</u>, 564 Pa. 604, 770 A.2d 287 (2001). An adverse ruling by the Commonwealth Court may be appealed to the Pennsylvania Supreme Court. <u>Werner v. Zazyczny</u>, 545 Pa. 570, 681 A.2d 1331(1996); 42 PA CONS.STAT. §§ 723(a), 761(a).

It is undisputed that the petitioner has not sought state judicial review of the Fifth Amendment claim. The petitioner does not claim that he has brought this Fifth Amendment claim in state court. He does not even suggest that it would be futile to do so. The court notes that the petitioner does state that he filed "a timely challenge to his sentence, which is now awaiting decision in the Pennsylvania Supreme Court..." (Doc. No. 21, p. 6). It does not appear, however, that the pending challenge to his sentence has anything to do with the petitioner's Fifth Amendment claim or his bid for parole. As a result, the Fifth Amendment claim should be dismissed for failure to exhaust state court remedies.

Even if the petitioner had exhausted state court remedies, he still would not be entitled to habeas corpus relief on this claim. The program in question does not implicate the Fifth Amendment right against self-incrimination

because it is a voluntary program which does not compel the inmates to incriminate themselves in a criminal proceeding. *See* Wolf v. Pennsylvania Dep't of Corrections, 334 F. Supp.2d 762 (E.D.Pa. 2004)(change in inmate's security status after she refused to make admissions required for participation in a sex offender treatment program did not result in atypical hardships, and thus were not so severe as to amount to compelled self incrimination).

The Fifth Amendment provides that "[n]o person...shall be compelled in any criminal case to be witness against himself." U.S.CONST. Amend. V.  The Amendment applies to the states via the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1 (1964).  The United States Supreme Court has held that the Fifth Amendment does not apply in the absence of compulsion. Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977)("the touchstone of the Fifth Amendment is compulsion").

This precise issue was recently addressed by the Third Circuit Court of Appeals in Thorpe v. Grillo, 2003 WL 22477890 (3d Cir. Pa.). The court concluded that the DOC policy of excluding those who refuse to admit guilt from the sex offender program did not violate the Fifth Amendment because it was a voluntary program, and because the consequences for nonparticipation were not sufficient to compel incriminating speech as anticipated by the Fifth Amendment.  Although Thorpe is not precedential, we

10

find the reasoning to be persuasive and will adopt it's conclusion that the program in question does not violate an inmate's Fifth Amendment right against self-incrimination.

In Thorpe the inmate brought a civil rights action pursuant to 42 U.S.C. § 1983 in which he claimed, among other things, that his Fifth Amendment right against self-incrimination had been violated as a result of the DOC policy which is at issue in this case. That is, the sexual offender program which has as a prerequisite for admission, that the inmate admit guilt for the crime which resulted in his incarceration.

As a preliminary matter the court considered whether Thorpe had a protected liberty interest in parole. Citing Greenholtz v. Inmates of Neb. Penal. & Corr. Complex, 452 U.S. 1 (1979), the court concluded that there is no constitutional or inherent right of a convicted person to be conditionally released from prison prior to the expiration of a valid sentence. *See also* Conn. Bd. Of Pardons v. Dumschat, 452 U.S. 458(1981)(Citing Greenholtz, s*upra*).[1] The court stated, "Thorpe was not entitled to parole, just to

---

[1]While states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, the Pennsylvania Supreme Court has long held that "a denial of parole does not implicate a constitutionally protected liberty interest." Coady v. Vaughn, 564 Pa. 604 (2001); *See also* Sandin v. Conner, 515 U.S. 472, 483-4 (1995). An inmate is not entitled to parole; he is entitled only to consideration for parole. Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp. 474, 476 (E.D. Pa.

consideration for parole." Thorpe at *3.

The court then looked to the program requirement of admission of guilt, and determined that, while the consequences for nonparticipation would most likely include denial of parole, that consequence was not sufficient to create a "compulsion" to testify as anticipated by the Fifth Amendment.

The court further held that Thorpe's refusal to admit guilt, and his resulting inability to participate in the program, did not extend his term of imprisonment, or automatically deprive him of parole. See also Forsythe v. Walters, 38 Fed.Appx. 734, 736 (3d Cir. 2002)(finding that conditioning admission into a pre-release program upon admission of guilt did not amount to compulsion because the program was voluntary and because parole is a benefit and not a right).

In this case Bell argues that it is error to conclude that the sex offender program in question is voluntary.  He claims that the DOC policy is plainly stated, and is that "deniers" shall not be granted parole.  He refers the court to 42 Pa. C.S. § 9718.1, which states:

§§ 9718.1. Sexual offender treatment

(a) General rule.--A person, including an offender designated as

1996)("[T]he 14th amendment does not provide that every prisoner has a right to be paroled, or that *any* expectation of parole is a constitutionally protected liberty interest.")(emphasis in original).

a "sexually violent predator" as defined in section 9792 (relating to definitions), shall attend and participate in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders if the person is incarcerated in a State institution for any of the following provisions under 18 Pa.C.S. (relating to crimes and offenses):

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses) if the offense involved a minor under 18 years of age.

(2) Section 4304 (relating to endangering welfare of children) if the offense involved sexual contact with the victim.

(3) Section 6301 (relating to corruption of minors) if the offense involved sexual contact with the victim.

(4) Open lewdness, as defined in section 5901 (relating to open lewdness), if the offense involved a minor under 18 years of age.

(5) Prostitution, as defined in section 5902 (relating to prostitution and related offenses), if the offense involved a minor under 18 years of age.

(6) Obscene and other sexual materials and performances, as defined in section 5903 (relating to obscene and other sexual materials and performances), if the offense involved a minor under 18 years of age.

(7) Sexual abuse of children, as defined in section 6312 (relating to sexual abuse of children).

(8) Section 6318 (relating to unlawful contact with minor).

(9) Section 6320 (relating to sexual exploitation of children).

(10) Section 4302 (relating to incest) if the offense involved a minor under 18 years of age.

(11) An attempt or solicitation to commit any of the offenses listed in this subsection.

(b) Eligibility for parole.--For an offender required to participate in the program under subsection (a), all of the following apply:

13

(1) The offender shall not be eligible for parole unless the offender has:

(i) served the minimum term of imprisonment;

(ii) participated in the program under subsection (a); and

(iii) agreed to comply with any special conditions of parole imposed for therapy or counseling for sex offenders, including sexually violent predators.

(2) Notwithstanding paragraph (1)(iii), an offender who is a sexually violent predator is subject to section 9799.4 (relating to counseling of sexually violent predators).

42 Pa. C.S. § 9718.1. A conviction for statutory rape falls within the purview

of this statute, and subsection (b) dictates that he "shall not be eligible for

parole" unless he has participated in the program in question.

The respondents' reply that the program in question is voluntary, but at

the same time they admit that nonparticipation will result in a denial of parole.

The respondents state:

> 42 Pa.C.S. § 9718.1 provides that persons convicted of certain enumerated offenses shall attend and participate in a Department of Corrections program of counseling and therapy designed for incarcerated sex offenders.  It provides that an offender required to participate in Department of Corrections sex offender therapy shall not be eligible for parole unless the offender has participated in that therapy.  It is the Board's position that the acceptance of responsibility for one's crime(s) is the beginning of rehabilitation, and the Board does not parole prisoners who refuse to even begin to be rehabilitated...
> ...[I]t was Petitioner's voluntary choice not to participate in sex offender programming and this choice did not and does not automatically deprive him of parole review or parole.  It is merely

14

one of several factors the Board considered and will again consider when reviewing his parole request.

(Doc. No. 20, pp. 3, 4).

As noted above, the petitioner claims that he has completed all of the prescriptive programs which are available to "deniers." Whether or not the program is voluntary is not dispositive of the Fifth Amendment challenge. The question is whether the consequences of refusing to admit guilt, fashioned by the petitioner as a *defacto* commission of perjury, constitutes a "compulsion" for Fifth Amendment purposes. We conclude that it does not.

The United States Supreme Court addressed a similar issue in McKune v. Lile, 536 U.S. 24 (2002). The Court stated that a valid conviction, and the ensuing restrictions on liberty, are essential to the Fifth Amendment analysis. "A broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." McKune, 536 U.S. at 37.

In McKune the prescriptive program was mandatory and required that the inmate not only admit guilt for the sex crime for which he was convicted, but he was also required to admit to any other sex related crimes he may have committed, without immunity for these confessions. The consequences for refusal to admit guilt, and therefore not participate in the program, included

15

significant reductions in several prison privileges. The plaintiff argued, among other things, that the program violated his Fifth Amendment right against self incrimination.

Commenting on statistical data which demonstrated that sexual offenders released to reenter society are more likely than other offenders to recommit a sexual crime, the court concluded that the program requirement of admitting guilt for the sex crime did not run afoul of either the Fifth or Fourteenth Amendments.  The Court said that the program served rational and legitimate penological objectives; that it did not constitute atypical or significant hardship to an inmate in comparison to the ordinary incidents of prison life, and that it did not extend the prisoner's term of incarceration.

Applying this analysis, this court cannot say that the consequences of refusing to admit guilt in the petitioner's case rise to the level of a Fifth Amendment violation.  It is undisputed that the consequences of the petitioner's choice are very unpleasant.  It may be that his refusal to participate in the program will persistently result in a denial of parole. These consequences, however, do not equate with the "compulsion" element necessary to state a Fifth Amendment violation. "It is the use of coerced statements during a criminal trial...that violates the Constitution." Renda v. King, 347 F.3d 550 (3d Cir. 2003). While the petitioner makes much of his

discovery of alleged "new evidence" and his hope for a new trial, those hopes are at best speculative, and on balance do not constitute a consequence so grave as to implicate the Fifth Amendment.[2]

Thus, the petitioner has not stated a violation of the Fifth Amendment right against self-incrimination in his case. He has not been compelled by any action of the board to testify against himself in a criminal proceeding. Furthermore, no action of the Board has increased his term of punishment. As a result, this claim should be dismissed.

B.    The *Ex Post Facto* Claim

The respondents argue that the petitioner also has not exhausted state remedies on *the Ex Post Facto* claim. The petitioner claims that it would be futile to attempt to bring the claim in a state proceeding. There are circumstances when the state judicial process proves inadequate. Exhaustion is excused where there is "an absence of available State corrective process, or...circumstances that render such process ineffective to protect the rights of

---

[2]The "new evidence" is a Pennsylvania State Police Investigation Report dated February 1986, of which the petitioner was aware at least as early as October 14, 1992. (Doc. No. 11, Ex. "A").  If this information has not resulted in a new trial to date, it is unlikely to do so in the future.

the applicant." 28 U.S.C. § 2254(b)(1).  Circumstances which render the process ineffective include: (1) where the state provides no means of seeking the relief sought; (2) where the courts have failed to alleviate obstacles to state review presented by circumstances such as the petitioner's *pro se* status, poor handwriting and illiteracy, and (3) where a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those underlying a federal habeas corpus petition, and there is no plausible reason to believe that the court will be persuaded to change it's decision. These circumstances are known collectively as the "futility" exception to the exhaustion requirement.  Lines v. Larkin, 208 F.3d 153, 162-3 (3d Cir. 2000).

In this case, the petitioner concedes that he did not seek state court review of his claim. He maintains, however, that because the Pennsylvania Supreme Court has already ruled, on several occasions, that the Parole Board's application of the 1996 amendments to persons sentenced prior to the amendments does not violate the *ex post facto* clause, there is no plausible reason to believe that the Pennsylvania Supreme Court could be persuaded to change its mind.  *See* Winklespecht v. Pennsylvania Board of Probation and Parole, 813 A.2d 688 (Pa. 2002); Finnegan v. Pennsylvania Board of Probation and Parole, 838 A.2d 684 (Pa. 2003), and Hall v.

18

Pennsylvania Board of Probation and Parole, 851 A.2d 859 ( Pa. 2004).[3]

We are constrained to agree with the petitioner that it would be futile to seek review of his claim in the state courts.  The Pennsylvania Supreme Court stated in Hall:

> Within our federal system of governance, there is only one judicial body vested with the authority to overrule a decision that this Court reaches on a matter of federal law: the United States Supreme Court.  Absent a contrary ruling from that tribunal, it is the law of this Commonwealth that the application of the 1996 amendments to the Parole Act to persons sentenced prior to their adoption does not violate the *ex post facto* clause of the United States Constitution.

Hall, 851 A.2d at 865.   There is no plausible reason to expect that the Pennsylvania Supreme Court will be persuaded to change its decision in this matter.  As a result, the exhaustion requirement should be waived under the facts of this case. *See* Adams v. Kelchner, 2004 WL 2634357 (M.D. Pa.).

Even if the petitioner had exhausted state court remedies, however, he still would not be entitled to habeas corpus relief because the petition, on its

---

[3]In these cases the Pennsylvania Supreme Court held that the 1996 amendments do not violate the *ex post facto* clause because they represent only a new method of exercising the Board's broad discretionary powers, and do not have the effect of increasing an inmate's punishment, either actually or potentially.

19

face, has not stated an *ex post facto* violation.  Article I, Section 9, Clause 3 of the United States Constitution prevents Congress from passing *ex post facto* laws. In order to constitute a violation of the *ex post facto* clause the new law must be one that punishes as a crime an act previously committed which was innocent when done;  or makes more burdensome the punishment for a crime after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed. Dobbert v. Florida, 432  U.S. 282, 292 (1977).  Therefore, to offend the *ex post facto* clause in this case, the Parole Board's actions must somehow increase Bell's punishment, either actually or potentially. *See* Coady v. Vaughn, 251 F.3d 480 (3d Cir. 2001).

The petitioner has not stated a violation of the *ex post facto* clause by virtue of the application of the Parole Board procedures in his case. As noted above, the Board's actions have not increased his punishment, either actually or potentially.   Bell was sentenced to a maximum term of 20 years. His maximum term will not expire until May 30, 2013.  His term of incarceration has not been increased by any action of the Parole Board.

Furthermore, the petitioner's reliance on Mickens-Thomas is misplaced. In that case an inmate whose sentence had been commuted by the Governor of Pennsylvania from a life sentence without parole, to one with the possibility

20

of parole, was nevertheless denied parole repeatedly by the Parole Board. At each parole consideration the Board cited the violent nature of the original crime as the reason for denying parole.  Under the particular facts of that case the Third Circuit Court of Appeals held that the negative impact of changes in the Parole Board's application of its amendments to parole laws did violate the *ex post facto* clause in that inmate's case because the Parole Board was applying a much harsher standard in denying parole than would have existed at the time of the inmate's conviction.

Specifically, in <u>Mickens-Thomas</u> the court undertook an analysis of parole records, and other reports, and determined that statistically fewer inmates were being granted parole since the implementation of the 1996 amendments. The court found the Parole Board's interpretation of the amendments had the effect, in practice, of materially changing the factors considered by the Board when evaluating parole applications.  The court stated that the post-1996 parole regime placed the primary consideration for granting parole on the assessment of the parole petitioner's risk to public safety.  The court determined that in requiring more emphasis on public safety issues the amendments fundamentally altered the Parole Board's process, and in doing so, created the negative impact requirement necessary to satisfy an *ex post facto* violation. <u>Mickens-Thomas</u>, 321 F.3d at 392.

Applying <u>Mickens-Thomas</u>, this court must determine whether the Parole Board placed greater emphasis on public safety concerns, than on other criteria, when it denied the petitioner parole.   Unlike the inmate in <u>Mickens-Thomas</u>, Bell has not been repeatedly denied parole because the Parole Board gave paramount consideration for public safety concerns when assessing his suitability for parole.  As indicated above, the petitioner's refusal to accept responsibility for the rape conviction, his inability to obtain a favorable recommendation from the Department of Corrections staff, and his need to participate in and complete additional institutional programs informed the Board's decision to deny parole, in addition to it's concern for public safety. (Doc. No. 1, Ex. "A") This is unlike <u>Mickens-Thomas</u> who had completed all proscribed programs and received the unanimous recommendation of the DOC that he be paroled. There was nothing in the decision to suggest that the Board placed paramount concern on public safety considerations, although it is has always been entitled to give that factor due consideration.

In addition, the reasons for denial of parole as set forth by the Parole Board are not outside the Board's discretion, which is very broad. ("...parole is a favor which lies solely within the Board's discretion." <u>Bonilla v. Vaughn</u>, 1998 WL 480833 *5 (E.D. Pa.)(citing <u>Weaver v. Pennsylvania Board of</u>

Probation and Parole, 688 A.2d 766 (Pa. Commw. 1997)); *See also* Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 289 (1999)( "parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board 's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence.").   On the basis of the record before the court, and the stated reasons for the Parole Board's denial of parole, the court concludes that there was a rational basis for the denial of parole.  There was no unfair application of amendments to parole laws, or 42 Pa. C.S. § 9718.1, in the petitioner's case.  As a result, no violation of the *ex post facto* clause occurred. Therefore, the petitioner is not entitled to relief on this claim, and it should be dismissed.

As indicated above, the petitioner also appears to be asserting a retaliation claim.  He claims that not only is he being denied parole because of his refusal to admit guilt for the rape he had been convicted of, but that it is the DOC's policy to routinely deny recommendation for parole to "deniers." Again, the petitioner offers no facts in support of these claims. While it is true that this court is required to liberally construe a *pro se* petitioner's pleadings, Haines v. Kerner, 404 U.S. 519, 520 (1972), in doing so, we need not credit a plaintiff's "bald assertions" or "legal conclusions."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997).

23

Even more importantly, in order to state a retaliation claim a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. *See* Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999); Drexel v. Vaughn, 1998 WL 151798 at *7 (E.D. Pa.).  Because the petitioner has not established that his refusal to admit guilt is constitutionally protected, he cannot prevail on a retaliation claim.  As a result, this claim should also be dismissed.


## III.    RECOMMENDATION

On the basis of the foregoing, it is recommended that the Petition for Habeas Corpus (Doc. No. 1) be **DENIED**.


                                        s/ Malachy E. Mannion
                                        MALACHY E. MANNION
                                        United States Magistrate Judge


Dated:   June 9, 2005